IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VICKI H. TRAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08cv782-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Vicki H. Traylor ("Traylor"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Traylor then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .
>
> To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.
>
> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

Traylor was 50 years old at the time of the initial hearing before the ALJ.  (R. 55, 88.) She completed high school.  (R. 215.)  Traylor's prior work experience included working as a housekeeper.  (R. 61.)  Traylor alleged that she became disabled on April 15, 1998, due to anxiety, migraine headaches, asthma, and back, hip, and leg pain. (R. 58, 63-64, 65-67, 76.) Following the hearing, the ALJ concluded that Traylor suffered from severe impairments of degenerative disc disease of the lumbar spine and non-severe impairments of anxiety disorder NOS and depressive disorder NOS.  (R. 16.)  The ALJ also determined that Traylor was unable to perform her past relevant work.  (R. 20.)  Based on the testimony of the vocational expert, the ALJ concluded that there were a significant number of jobs existing in the national

3

economy that Traylor could perform, including working as a surveillance system monitor and call out operator.  (R. 21.)  Accordingly, the ALJ concluded that Traylor was not disabled.  (R. 22.)  Traylor passed away on December 3, 2008.  (Doc. No. 16, Pl's Brief, p. 2.)

### IV.  The Plaintiff's Claims

As stated by Traylor, she presented the following issues for the court's review:

1. Whether the ALJ erred as a matter of law when he failed to mention or consider all of Traylor's impairments in his decision?

2. Whether the ALJ erred as a matter of law when he failed to specify the weight given to Traylor's treating physician?

3. Whether the ALJ erred in determining that Mrs. Traylor had the residual functional capacity to perform sedentary work?

(Doc. No. 16, p. 1.)

### V.  Discussion

**A.  Migraine Headaches**.  Traylor asserted that the ALJ erred in determining that her migraine headaches were not a severe impairment.  She also argued that the ALJ failed to consider the effect of her migraine headaches when determining that she had the residual functional capacity to perform sedentary work.

The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval

Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing that [her] impairments are 'severe' within the meaning of the Act." *McDaniel*, 800 F.2d at 1030-31. Once the plaintiff establishes that she suffers from a severe impairment, the ALJ is not entitled to ignore that evidence.

Although the record is replete with references to Traylor suffering from migraine headaches after the date her insured status expired on March 31, 2005,[4] there are no diagnoses indicating that Traylor suffered from migraine headaches during the relevant time period.[5] The court recognizes that Traylor occasionally complained of frontal and/or sinus headaches between June 2000 and November 2000 (R. 247, 250, 253, 256, 259, 262, 265, 268, 274); however, there is no evidence that Traylor suffered from migraine headaches during this time period.[6] A review of the record demonstrates that the ALJ's determination that Traylor's headaches were not a severe impairment is supported by substantial evidence. Furthermore, because the evidence establishes that Traylor did not suffer migraine headaches during the relevant time period, the ALJ did not err in failing to consider the effect of her migraine

---

[4] (R. 199, 40, 409, 418, 426, 434, 442, 450, 458, 472, 483, 500, 510, 521, 532.)

[5] Traylor alleged that she became disabled on April 15, 1998. Traylor's insured status expired on March 31, 2005. Thus, the relevant time period is from April 15, 1998, until March 31, 2005.

[6] The court also notes that, in March 1996, Dr. Aldrete noted that Traylor indicated that she suffered from headaches due to birth control pills. (R. 275.)

headaches when determining that she had the residual functional capacity to perform sedentary work.

**B. Pain.** Traylor asserted that the ALJ failed to properly evaluate and credit her complaints of pain when determining that she had the residual functional capacity to perform sedentary work.

During the hearing, Traylor testified that she suffered from pain in her back, hips, tail bone, and legs, that she had five bulging discs, that on a scale from zero to ten her back pain was a nine, that on some days she "[could] not do anything," that she was able to sit no more than ten to fifteen minutes at a time, and that she had to "sit to one side" because her tail bone hurt. (R. 58, 63-65, 67, 73, 76.) She also testified that she was able to stand for no more than fifteen minutes at a time, that she had difficulty walking up and down stairs, that she could walk for no more than a block or two before having to stop, and that she was able to carry ten pounds for no more than five to ten minutes. (R. 63-64.)

The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if he finds

evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. This standard requires that the articulated reasons be supported by substantial reasons. If there is no such support, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

The medical evidence demonstrates that Traylor suffered from back, hip, and leg pain. For example, on September 28, 1996, an MRI of Traylor's lumbar spine indicated bulging discs at L4-5, L3-4, and L5-S1. (R. 287.) On August 7, 2003, an MRI of Traylor's lumbar spine indicated degenerative changes primarily at L4-5, including minimal broad-based annular bulging, and lesser changes at L5-S1. (R. 286.) Traylor also received nerve blocks, epidural injections, and trigger point injections on a routine basis between March and April 1997 and between June and November 2000.[7] (R. 245-46, 248, 251, 254, 25, 260, 263-64, 266-67, 269, 271-73, 357, 370, 379, 389.) Therefore, Traylor meets the first prong of the pain standard.

However, the ALJ determined that Traylor's testimony of disabling pain was not credible. Specifically, the ALJ found that the objective clinical findings, including Traylor's

---

[7] Traylor also received nerve blocks, epidural injections, and trigger point injections on a routine basis between October 2005 and August 2007. (R. 406-08, 415-16, 423-25, 431-33, 439-41, 447-49, 455-57, 462-64, 469-71, 477-82, 488-90, 494-99, 505-09, 515-520, 526-31, 537-42, 576-78, 584-86, 592-94, 600-602, 608-610, 616-18, 624-26.) This treatment, however, was beyond the relevant time period.

diagnostic imaging records, demonstrated an individual with limitations, but not of a disabling nature. (R. 20.) The ALJ also found that no treating or consultative physician had determined that Traylor was unable to work during the relevant time period, that there were no medical records indicating that the claimant's impairments were resistant to treatment with the use of appropriate medications, and that she had failed to sustain a consistent medical regimen for the treatment of her pain during the relevant time period. (*Id*.) In addition, the ALJ noted that there was no evidence of any ongoing difficulties with side effects of medication prior to the date Traylor was last insured for benefits. (*Id*.)

Substantial evidence in the record supports the ALJ's finding that the medical records are inconsistent with Traylor's allegations that she suffered from disabling pain during the relevant time period. In July 2005 – four months after the date Traylor was last insured for benefits -- Dr. Aldrete, an anesthesiologist, summarized Traylor's medical history as follows:

> . . . Mrs. Traylor's neck and low back pain started at age 38 while working full time as a housekeeping supervisor at a local golf course. Eventually, the pain became unbearable and after a hysterectomy it worsened even more. She went to several general practitioners at the local doctors' offices and saw all 6 doctors during a two-year span. Usually every 2-3 months she received Decadron injections, analgesics and muscle relaxants. X-rays to find the cause of her constant pain and muscle spasms were never ordered. She was no longer able to maintain her job and became depressed. I then first saw Mrs. Traylor on 3/21/96 with a chief complaint of severe lower back pain with sharp pain and radiating to the left leg. Upon examination the straight leg lift was positive on the left. I ordered diagnostic testing, an MRI of the lumbar spine (03/28/96) which was interpreted by a board certified radiologist as: At L2-3 mild facet joint changes and osteophytosis are noted. Mild foraminal narrowing is seen bilaterally, slightly worse on the right. At L3-4 hypertrophic facet joint changes and osteophytosis are noted. Slight eccentric disc bulging is noted toward the right indenting the thecal sac. The spinal canal is narrowed. At L4-5 there is again noted spinal canal stenosis, hypertrophic changes of the facet joints, ligamentum flavum and vertebral body hypertrophy with bulging

>of the disc centrally and posterolaterally bilaterally – broad – based disc bulging causing flattening and concavity of the ventral aspect of thecal sac. The foramina are narrowed bilaterally.  At L5-S1 slight disc bulging is flattening the ventral aspect of the thecal sac, hypertrophic changes are seen of the facet joints and vertebral bodies and mild narrowing is seen of the foramina bilaterally, worse on the left". Since then I have treated her on a regular basis, at first more frequent and now the treatments have been stretched to monthly intervals. Mrs. Traylor now reports that she has no longer spasms in her neck at all and her flexibility is better and very important to her, her frame of mind is better. She even went back to work part-time for a while and does her own housework. She has been able to work in her yard and in the summer time she cans her fruits and vegetables, she had even been able to make enough to sell some to a local restaurant and some individuals. Overall she feels that the combination of treatments with the prescribed oral medication and exercise program makes her life a lot more bearable. Although Mrs. Traylor feels that when the treatment interval is more than 2 months she deteriorates again. A lumbar spine MRI dated 08/07/03 revealed upon review a retrolisthesis of L4 on L5. Posterior spondylosis and broad based annular bulging more toward the right. Minimal right foraminal narrowing without left foraminal narrowing left foraminal narrowing with borderline canal stenosis. Facet hypertrophy is present. At L5-S1 right and mild left facet hypertrophy with minimal right and minimal-to-mild left foraminal narrowing. I discussed with Mrs. Traylor that she is to wear an elastic lumbar support. On 12/23/03 Mrs. Traylor was seen at the Southeast Alabama Medical Center in Dothan, AL for complaints of fever and coughing up red sputum. She was diagnosed with pneumonia and received IV antibiotics and two breathing treatments with a nebulizer for the wheezing. With Mrs. Traylor's diagnoses of degenerative facet joint disease lumbar, degenerative disc disease of the lumbar spine with bulging discs at L4-5, L5-S1, retrotlisthesis of L4 on L5, spondylosis lumbar, spinal canal stenosis lumbar, lumbar radiculitis, bilateral, decreased motor strength, pain bilateral SI-joints, muscle spasms, smoker, status post hysterectomy, appendectomy and pneumonia I developed a treatment plan for her that consists of isometric exercises, trying to avoid flexion and hyperextension of the lumbar spine, to continue to wear the lumbosacral support, weight loss program, she is to receive epidurals, nerve blocks, facet blocks as based on her complaints, physical examination and supported by diagnostic findings.

(R. 243-44.)

The medical records further demonstrate that, during the relevant time period, Traylor sought treatment for her back pain on a sporadic basis. Although the medical records indicate

that she was routinely prescribed narcotic pain medication, including Hydrocodone, and muscle relaxers between February 1999 and July 1999 and between August 2001 and July 2003, there are no records indicating that Traylor was prescribed this medication at any time between August 1999 and July 2001 or August 2003 and September 2005. (R. 170-197.) Moreover, Traylor did not complain of ongoing serious side effects from this medication. In addition, the evidence indicates that, although Traylor received injections, nerve blocks, epidural injections, and trigger point injections on a routine basis between March and April 1997 and between June and November 2000, she did not visit Dr. Aldrete or any other physician for her complaints of back pain at any time between May 1997 and May 2000 or December 2000 and September 2005. Furthermore, when she did receive injections and other medical treatment for her complaints of pain, Traylor indicated that her level of relief was "good." (R. 247, 250, 253, 256, 259, 262, 265, 268, 274.) Given that during the relevant time period, Traylor did not consistently seek pain management treatment and that her pain decreased after receiving medical treatment, the court concludes that the ALJ's determination that the objective medical evidence does not support the severity of symptoms alleged by Traylor is supported by substantial evidence.

The ALJ considered that Traylor's condition was capable of giving rise to some pain; however, he concluded that her condition was not so severe as to give rise to the disabling pain as alleged. The ALJ has discretion to discredit a claimant's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt*, 921 F.2d at 1223. A reviewing court will not disturb a clearly articulated credibility finding where there is

substantial evidence in the record to support the finding. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). The ALJ's reasons for discrediting Traylor's testimony of disabling pain were both clearly articulated and supported by substantial evidence. After a careful review of the record, the court concludes that the Commissioner properly discounted Traylor's testimony of pain.

**D.  The Treating Physician's Opinion.**  Traylor complained that the ALJ failed to assign appropriate weight to the opinion of her treating physician, Dr. Aldrete. Specifically, Traylor asserted that the ALJ failed to consider Dr. Aldrete's opinion that she suffered from chronic intractable pain with radiation to the lower extremities, that the pain became unbearable after a hysterectomy, and that the pain caused her to no longer be able to maintain her job.

When discussing Traylor's allegations of pain, the ALJ assigned determinative evidentiary weight to the physical capacity evaluation of Dr. Keith Vanderzyl, a consultative physician. The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons

for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

In his analysis, the ALJ determined that Traylor had the residual functional capacity to perform work at the sedentary exertional level. The ALJ's determination is supported by the medical records, including the opinions of both Dr. Aldrete and Dr. Vanderzyl. First, the court notes that Dr. Aldrete's medical records indicate that he first noted Traylor's history of "chronic intractable pain with radiation to the lower extremities" and that Traylor "was no longer able to maintain her job" in a July 2005 memorandum when describing the state of Traylor's health prior to her seeking medical treatment for her complaints of back, hip, and leg pain in 1996. Additionally, the memorandum sets forth Dr. Aldrete's reasons for beginning a treatment plan in 2005 which included isometric exercises, the avoidance of flexion and hyperextension of her lumbar spine, the wearing of a lumbosacral support, weight loss, epidural injections, and nerve blocks. (R. 243.) Secondly, despite noting that Traylor had suffered from "chronic intractable pain," Dr. Aldrete imposed few restrictions on Traylor's activities. Moreover, Dr. Aldrete's finding that Traylor was unable to maintain her job as a housekeeper is consistent with the ALJ's determination that she did not have the residual functional capacity to return to her past work as a housekeeper. In addition, the opinions of Traylor's treating physician and the consultative physician are consistent. On April 10, 2007,[8] Dr. Vanderzyl conducted a consultative examination of Traylor. (R. 553.) The consultative physician found that Traylor would be able to stand or walk no more than two hours a day,

---

[8] The court notes that Dr. Vanderzyl's examination occurred over two years after the date Traylor was last insured. The medical records indicate that Traylor's back, hip, and leg pain worsened and that unfortunately her health steadily declined after the expiration of the relevant time period.

that she could sit for an unlimited amount of time, that she could frequently lift five to ten pounds, and that she could never push or pull with her left leg, climb, balance, stoop, kneel, crouch, crawl, or reach overhead. (R. 560.) In July 2005, Dr. Aldrete recommended that Traylor should avoid flexion and hyperextension of her lumbar spine. Thus, both Dr. Vanderzyl and Dr. Aldrete determined that Traylor's condition would prevent her from perform activities involving the flexion and hyperextension of her lumbar spine, such as stooping, kneeling, and crouching. Therefore, when concluding that Traylor had the residual functional capacity to perform no more than sedentary work and that she could not return to her past work as a housekeeper, the ALJ's determination was consistent with the opinions of both Dr. Vanderzyl and Dr. Aldrete. Upon consideration of the evidence as a whole including both Dr. Vanderzyl's and Dr. Aldrete's findings, the court concludes that the ALJ's determination that Traylor could perform work at the sedentary level is supported by substantial evidence.

Traylor also asserted that Dr. Vanderzyl's determination that she could never stoop would preclude a finding that she was able to perform sedentary work. Specifically, she asserted that the SSR 96-9p establishes that a "complete inability to stoop" requires a finding of disability.

SSR 96-9p provides:

> . . . A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

In this case, the ALJ questioned the vocational expert concerning Dr. Vanderzyl's findings, including his determination that Traylor should never stoop. (R. 84-85.) Specifically, the ALJ asked the vocational expert to "assume that [he found Dr. Vanderzyl's opinion] to be a fair assessment of her abilities to do basic work activities, and tell [him] whether or not with those limits, she can do her past work." (R. 85.) When the vocational expert stated that Traylor would be unable to perform her past work, the ALJ asked the expert to assume the facts from his previous hypothetical, specifically asking whether there were other jobs that existed in the economy that an individual with the aforementioned limitations could perform and whether such a person could perform a full range of sedentary work. (*Id.*) The vocational expert testified that such a hypothetical individual could perform work existing in significant numbers in the national economy, including work as a surveillance system monitor or call out operator. (R. 85-86.) The vocational expert further testified that the number of sedentary jobs available would be 615, 600 and that the hypothetical individual could perform 50 % of those jobs. (R. 86.) Thus, the ALJ properly followed the procedure set forth in SSR 96-9p in presenting Traylor's limitations in a hypothetical question to the vocational expert, who identified a number of jobs existing in the national economy that Traylor could perform despite the restrictions found by both the ALJ and Dr. Vanderzyl. SSR 96-9p requires no more. *See Crooker v. Apfel*, 114 F. Supp. 2d 1251, 1257 (S.D. Ala. 2000). This court therefore concludes that the ALJ's determination that Traylor could perform other work is supported by substantial evidence.

Accordingly, the court concludes that the decision of the Commission should be

affirmed.  A separate final judgment will be entered.

Done this 15th day of January, 2010.


                                                /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE